In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2162

STEVEN YAHNKE,

*Plaintiff-Appellant*,

*v.*

KANE COUNTY, ILLINOIS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-05151 — **Amy J. St. Eve**, *Judge.*

ARGUED JANUARY 20, 2016 — DECIDED MAY 24, 2016

Before WOOD, *Chief Judge,* and MANION and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* After the Sheriff of Kane County terminated Deputy Sheriff Steven Yahnke's employment, Yahnke sued the County and the Sheriff, alleging that he was terminated because of his political affiliation and that the termination occurred without due process. The district court granted summary judgment in favor of the defendants on both

counts, and Yahnke appeals. We affirm the judgment on the due process claim but we vacate the judgment on the political affiliation count and remand for trial.

## I.

The Kane County Sheriff's office hired Yahnke in 1986, and he worked as a Deputy Sheriff for more than twenty years, eventually holding the rank of Sergeant. The position of Sheriff is an elected post in Kane County, and in 2006, then-Sheriff Kenneth Ramsey opted to retire rather than run for re-election. Deputy Sheriff Patrick Perez decided to run for the post, and Yahnke also contemplated entering the race. At the time, Yahnke told several people about his intention to run and spoke to a number of people about becoming his campaign manager and raising funds. Eventually, Yahnke decided not to run for the office, and Perez, a Democrat, defeated Republican Kevin Williams, another Deputy Sheriff whom Yahnke had supported.

Perez took over the post in December 2006. Earlier that year, Sheriff Ramsey had approved Yahnke's request to engage in secondary employment as the part-time police chief of the Village of Maple Park. In June 2007, after Sheriff Perez took office, Yahnke was injured while working as a Deputy Sheriff and began receiving disability benefits. In July 2007, Perez and Undersheriff Stephen Ziman advised Yahnke that his secondary employment as Maple Park police chief was suspended until he could return to work in the Sheriff's office. But Ziman allowed Yahnke to continue with some involvement in the Maple Park position, such as opening the mail. In August 2007, Yahnke hosted a party at his home attended by almost all of

the Maple Park police officers. At that event, Yahnke openly discussed a plan to run for the Sheriff's position in 2010, the next election cycle.

Because Yahnke remained on temporary total disability, in early November 2007, Ziman ordered Yahnke to cease all secondary employment, including the limited involvement in Maple Park that Ziman previously allowed. In the meantime, Perez sought a legal opinion from the County's State's Attorney regarding whether Yahnke's dual employment presented a conflict of interest. The State's Attorney consulted with the Illinois Attorney General and concluded that secondary employment as chief of the Maple Park police presented a potential conflict of interest with Yahnke's job as a Deputy Sheriff.[1] Later that same month, Sheriff Perez permanently revoked Yahnke's authorization to act as police chief of Maple Park.

Sheriff Perez also opened an investigation with the Office of Professional Standards ("OPS") into whether Yahnke continued to work as police chief of Maple Park during the period that his secondary employment was suspended. The OPS investigator collected business and public records that could be construed as evidence that Yahnke had continued to perform some of his duties as police chief of Maple Park after November 2007. On October 7, 2008, Sheriff Perez notified Yahnke in two letters that he was filing charges with the Merit Commission seeking his removal for cause. In the first letter,

---

[1] Maple Park is located primarily in Kane County, but straddles the border of neighboring DeKalb County.

Perez accused Yahnke of violating Merit Commission Rules by failing to display absolute honesty during an OPS investigative interview that took place on September 2, 2008, and by failing to follow the orders of the Sheriff and Undersheriff to cease secondary employment. In the second letter, Perez charged Yahnke with failing to display absolute honesty regarding an OPS investigation into Yahnke's use of comp time and overtime procedures. The Merit Commission set a hearing date to review the charges. For reasons we will discuss below, that hearing never took place. The Sheriff terminated Yahnke's employment on October 28, 2008.

Yahnke sued Kane County and Sheriff Perez, asserting that his termination was in retaliation for exercising his First Amendment rights, and that he was terminated without due process, in violation of 42 U.S.C. § 1983.[2] Yahnke asserted he had been terminated because of his political affiliation and because the Sheriff believed that Yahnke would oppose him in an election. In the course of discovery in a state court lawsuit between the same parties, Undersheriff Ziman was questioned about the Sheriff's reaction to learning that Yahnke had engaged in outside employment. Ziman testified:

> The words I recall, when it came to disciplining Sergeant Yahnke, I went to the Sheriff and I said, You know, he was teaching, he was—we sent

---

[2] Yahnke also brought a state law claim for retaliatory discharge under the Illinois Workers' Compensation Act. After granting judgment in favor of the defendants on the federal claims, the district court declined to exercise supplemental jurisdiction over the state law claim and dismissed it without prejudice.

> Internal Affairs out and they found him teaching,
> he's guilty of that, do you want to give him a letter,
> time off or whatever, I went to the Sheriff and asked
> him that. I don't mean to be vulgar here, but he said,
> I'm not giving him any time off, I'm firing him. He
> thinks he's going to run for Sheriff against me some
> day.

R. 170-3 at 67-68.[3] In opposition to the defendants' motion for summary judgment, Yahnke cited this testimony as direct evidence of the Sheriff's motive for his termination, but the court did not address this evidence. Instead, the district court assumed that Yahnke established a *prima facie* case of First Amendment retaliation, and turned to the Sheriff's stated reasons for firing Yahnke. The court found that Perez had non-retaliatory reasons to terminate Yahnke, namely, that he had continued his secondary employment after being ordered to stop, and that he was not absolutely honest in departmental investigations of his conduct. The court then shifted the burden back to Yahnke to demonstrate that the Sheriff's stated reasons were not worthy of credence. The court concluded, again without addressing the deposition testimony of Undersheriff Ziman, that Yahnke had failed to produce evidence that the Sheriff's stated reasons were a pretext and that the true reason was Yahnke's political affiliation or ambitions. The court also

---

[3] Although Ziman could not recall the precise date of this conversation, by considering the context and construing the record in Yahnke's favor, it is apparent that it took place during the time period that the Sheriff was investigating Yahnke for engaging in secondary employment. It was therefore within the relevant time frame.

concluded that Yahnke was provided all the process that was due in the course of his termination, and that Yahnke waived certain procedures that were available to him. The court therefore granted summary judgment in favor of the defendants. Yahnke appeals.

## II.

On appeal, Yahnke asserts that the court erred in granting judgment to the defendants on the First Amendment claim when he presented direct evidence that the Sheriff terminated him because of his political activity. Yahnke also notes that, in shifting the burden to Yahnke to demonstrate that the Sheriff's stated reasons were a pretext, the court erroneously required Yahnke to meet all three parts of a disjunctive standard that this court applied in *Carter v. Chicago State Univ.*, 778 F.3d 651, 659 (7th Cir. 2015). Yahnke also argues on appeal that the court erred in granting judgment on his due process claim when the court disregarded disputed issues of material fact. Finally, Yahnke asserts that the district court should have granted his motion to strike the defendants' Local Rule 56.1 statement of facts for various violations of that rule.

We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to Yahnke and construing all reasonable inferences from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Naficy v. Illinois Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012); *Norman–Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Naficy*, 697 F.3d at 509. *Anderson*, 477 U.S. at 255; *McGreal v. Ostrov*, 368 F.3d 657, 663 (7th Cir. 2004).

## A.

"The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity." *Heffernan v. City of Paterson, New Jersey*, 136 S. Ct. 1412, 1416 (2016) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); and *Branti v. Finkel*, 445 U.S. 507 (1980)). To make out a *prima facie* claim for a violation of First Amendment rights, public employees must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was at least a motivating factor in the employer's actions. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Greene v. Doruff*, 660 F.3d 975, 977-78 (7th Cir. 2011); *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). The defendants concede that Yahnke's political affiliation and desire to run for political office is protected by the First Amendment. *See Branti*, 445 U.S. at 516-17 (to prevail in a First Amendment retaliation claim, it is sufficient for the plaintiffs to prove that they were dismissed solely for the reason that they were not affiliated with or sponsored by a particular political party). There is no dispute that Yahnke's termination is the sort of deprivation likely to deter the exercise of First Amendment rights. *See Rutan v. Republican Party of Illinois*, 497 U.S. 62, 73-74 (1990) (dismissal, denial of transfer, failure to recall after layoff, and refusal to promote are significant penalties that impermissibly encroach on First Amendment freedoms unless such practices are

narrowly tailored to further vital government interests). The only factor at issue here is whether the Sheriff terminated Yahnke because of his political affiliation.

The district court analyzed causation under the burden-shifting framework set out by the Supreme Court in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). The Court held that, in proving a First Amendment claim, the initial burden is on the plaintiff to demonstrate that his conduct was constitutionally protected and that his conduct was a substantial or motivating factor in the defendant's action against him. The burden then shifts to the defendant to show that it would have taken the same action even in the absence of the protected conduct. *Mt. Healthy*, 429 U.S. at 287. We later summarized the rule:

> [T]he burden of proof relating to causation is divided between the parties in First Amendment tort cases. To make a *prima facie* showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury. The defendant can rebut, but only by showing that his conduct was not a necessary condition of the harm—the harm would have occurred anyway.

*Greene*, 660 F.3d at 980. On summary judgment, of course, the plaintiff's burden is simply to demonstrate that there is a genuine issue of material fact on the question of causation.

The district court assumed (without citing any particular piece of evidence) that Yahnke met the initial burden of demonstrating that his political affiliation was a motivating factor in the Sheriff's decision to terminate him. The court then

turned to the Sheriff's stated permissible, non-political reasons for terminating Yahnke, namely that he violated regulations that required him to be honest in all department dealings and that he had failed to comply with the order that he cease secondary employment. The court then shifted the burden back to Yahnke to demonstrate that the Sheriff's stated reasons were pretextual, and that the real reason was retaliatory animus. *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012). Showing pretext, the court held, required evidence that the Sheriff's reasons were "unworthy of credence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). To establish that the Sheriff's reasons were not worthy of credence, the court turned to our opinion in *Carter v. Chicago State University*, 778 F.3d 651 (7th Cir. 2015). There we held that a plaintiff could prove that a defendant's proffered justification is unworthy of credence by "providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate" the employment action. *Carter*, 778 F.3d at 659. Unfortunately, the district court inadvertently switched out the "or" in that standard for an "and" and created a conjunctive test rather than a disjunctive one. Although Yahnke twice pointed out this error in his brief on appeal, the defendants inexplicably continued to cite the misquoted language in their response brief.

In any case, all Yahnke need do at this stage of the proceedings is demonstrate a genuine issue of material fact on the Sheriff's intent in firing him. In the context of the *Carter* case, Yahnke must demonstrate a genuine issue on any one of three factors we set out in that case to survive summary judgment.

Yahnke easily demonstrates a genuine issue on the second
*Carter* factor by citing the deposition of Undersheriff Ziman.
Ziman reported to the Sheriff that an investigator had discov-
ered that Yahnke was teaching during the period of time that
he was prohibited from engaging in secondary employment.
The Undersheriff asked whether the Sheriff wanted to "give
him a letter, time off or whatever," ostensibly referring to a
written reprimand or a suspension, both of which were options
under the progressive discipline system of the Collective
Bargaining Agreement. *See* R. 150-4 at 22. As we noted above,
the Sheriff replied, "I'm not giving him any time off, I'm firing
him. He thinks he's going to run for Sheriff against me some
day." A finder of fact crediting Ziman's version of the conver-
sation could easily find that the Sheriff fired Yahnke because of
his political ambitions and his political opposition to the
Sheriff, a motive for the termination that is impermissible
under the First Amendment. Construing that conversation in
favor of Yahnke, it is clear that, even if Yahnke had violated
department rules, lesser forms of discipline were available and
were suggested as appropriate by the Undersheriff. The finder
of fact could conclude that Sheriff Perez rejected these lesser
sanctions in favor of termination *because* Yahnke expressed a
desire to run against the Sheriff, and that the proffered reasons
were not the actual motivation for the discharge. On the
causation issue, that is more than enough to defeat summary
judgment, and a trial must be held to determine the Sheriff's
true motivation. We vacate the judgment on the First Amend-
ment claim and remand for trial.

**B.**

We affirm, however, the district court's judgment on Yahnke's due process claim. In the second count of his complaint, Yahnke alleged that he had a protected property interest in his continued employment with Kane County and that he was not afforded due process when the Sheriff terminated his employment. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, we must first determine whether the plaintiff was deprived of a protected interest and then determine what process is due. *Bryn Mawr Care, Inc. v. Sebelius*, 749 F.3d 592, 598 (7th Cir. 2014); *Pugel v. Board of Trustees of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). The parties do not dispute that Yahnke had a protected property interest in his continued employment with the County; a Collective Bargaining Agreement and the Kane County Sheriff's Merit Commission Rules and Regulations made Yahnke a tenured deputy subject to the Merit Commission. We therefore focus on the process that was due.

Under the Merit Commission Rules, a hearing must commence within thirty days after the Sheriff files a written complaint with the Merit Commission seeking removal of an employee unless the employee waives the thirty day requirement or elects arbitration instead of a hearing. As we noted above, on October 7, 2008, the Sheriff notified Yahnke that he was filing charges with the Merit Commission seeking Yahnke's termination. On October 15, 2008, the Merit Commis-

sion sent a letter to Yahnke informing him that it had received
the Sheriff's charges and request for termination. That same
letter notified Yahnke that the Merit Commission had sched-
uled the requisite hearing for October 27, 2008.

Also on October 15, 2008, a lawyer from Yahnke's union
filed a "Step Three" grievance on Yahnke's behalf (hereafter
"Step Three Grievance"). The terms of the Collective Bargain-
ing Agreement provide for a four-step grievance process. In
Step One, the employee may raise a grievance in writing with
the employee's immediate supervisor. In the case of County
employees such as Yahnke, that grievance is referred to the
Sheriff. If unresolved at Step One, the grievance proceeds to
Step Two, which encompasses review by the County Human
Resources Director. If necessary, at Step Three, the grievance
must be presented by the union to the Sheriff or his designee
or the County Board Chairman. If still unresolved, at Step
Four, the union must notify the Sheriff in writing of the intent
to go to arbitration. But Merit Commission employees such as
Yahnke may, as an alternative to review by the Merit Commis-
sion, skip directly to Step Three:

> The discipline of Merit Commission employees shall
> have as an alternative to review by the Merit Com-
> mission be subject to review by the provisions of
> Step Three of the Grievance Procedure. Within the
> time provided for in Step Four of the Grievance
> Procedure for appealing the decisions of the Sheriff,
> the Union may file a request for arbitration under
> the provisions of Step Four of the Grievance Proce-
> dure. If no such request is made, then the employee

> shall be deemed to have elected to proceed under the terms of the rules of the Merit Commission.

R. 150, Ex. 4 at 23-24.

In Yahnke's Step Three Grievance, the union noted that Yahnke had been the subject of an extensive investigation regarding his secondary employment, and that Yahnke had grieved the central issues of his right to maintain secondary employment. The Step Three Grievance also noted that Yahnke's prior grievance had proceeded to the point of arbitration but that the Sheriff had changed legal counsel and forced a continuance of the arbitration. The Sheriff then placed Yahnke on administrative leave before notifying him on October 9, 2008 that the Sheriff was sending the matter to the Merit Commission with a request for termination. At that point, the Sheriff's office stopped paying Yahnke. Yahnke asserted that these actions violated the Collective Bargaining Agreement because: (1) the order to cease secondary employment was illegal and arbitrary, and the Sheriff's continuance of the arbitration worked to Yahnke's detriment; (2) the Sheriff placed Yahnke in illegal unpaid status prior to a termination hearing with the Merit Board; (3) Yahnke was not provided an appropriate complaint as required by the Collective Bargaining Agreement; (4) the discipline was given without just cause, based on an illegal order, and was not progressive or corrective; and (5) the discipline was a politically motivated act of retaliation. In the box on the grievance form for "relief sought," Yahnke's union representative wrote, "Stay any discipline until the outcome of the grievance arbitration addressing the central issue of the O.P.S. investigation." R. 150, Ex. 7.

A week later, the union lawyer representing Yahnke sent a letter to the chairman of the Merit Commission stating:

> I have been made aware of a letter that you have sent to … Yahnke, concerning a Merit Commission hearing this coming Monday October 27, 2008. Pursuant to … the Collective Bargaining Agreement … Yahnke has exercised his alternative to review by the Merit Commission by provision of step 3 of the Grievance Procedure. The step 3 grievance was filed … on October 15, 2008. … In the event the Chairman denies the grievance, Sergeant Yahnke wishes to proceed to step 4 of the grievance process under the Collective Bargaining agreement with his intent to go to independent arbitration.

R. 150, Ex. 15.

On October 28, the Sheriff again sent Yahnke a series of letters setting forth his purported violations, and stating in relevant part:

> The violations of these general orders warrant your dismissal as a Deputy Peace Officer Sergeant. Based on my authority under the terms of 55 ILCS 5/3-8014, and since you have waived your right to a Merit Commission hearing and filed notice of your intent to go to independent arbitration, I am terminating your employment with the Kane County Sheriff's Department, effective immediately.

R. 150, Ex. 8. At a Merit Commission meeting that same day, Undersheriff Ziman "advised the Commission that Sgt. Steven

Yahnke has been fired and requested arbitration. The Commission will not be hearing the case." R. 150, Ex. 9.

And indeed the Commission never heard the case. Nor did it go to arbitration, even though the union sought to compel arbitration on Yahnke's behalf in state court. As the Illinois Appellate Court explained, when Yahnke attempted to set up the arbitration hearing, Sheriff Perez responded that the Step Three Grievance had been resolved and he did not agree to arbitrate it. *Policemen's Benevolent Labor Comm. v. County of Kane*, 2012 IL App (2d) 120009-U, 2012 WL 6969132 (Ill. App. Ct. 2012). Perez took the position that Yahnke's October 15 grievance had been resolved when Yahnke "was sent his check for the time off work he claimed prior to his termination." Yahnke conceded in the state court proceeding that the termination did not occur until October 28, and that his October 15 Step Three Grievance was not filed with regard to the October 28 termination letter. The Sheriff argued that Yahnke had not filed a grievance specifically challenging his termination. The Appellate Court affirmed the trial court's conclusion that, once the October 15 grievance was resolved, nothing was left to arbitrate, and the October 15 grievance was insufficient to challenge the termination.

With that factual background in place, the district court analyzed Yahnke's due process claim. The court noted that Yahnke had entered into an Agreed Order to waive his right to proceed before the Merit Commission and instead elected to proceed to arbitration under the Collective Bargaining Agreement. R. 163, Ex. 5. But having waived the Merit Commission hearing, Yahnke did not follow up and file a grievance related to his October 28 termination. The court noted that Yahnke had

adequate procedures available and simply did not follow them. The court therefore granted judgment in favor of the defendants on the due process claim.

On appeal, Yahnke argues that, under the Merit Commission Rules, he must be afforded a hearing before the Merit Commission unless he waives the thirty day requirement or elects arbitration instead of a hearing. Yahnke contends that the Sheriff conceded that Yahnke had requested arbitration and that Yahnke had "filed notice of [his] intent to go to independent arbitration." Yahnke contends that the Sheriff could not have withdrawn the Merit Commission charges unless the Sheriff also accepted that Yahnke had already properly filed his request for arbitration of his termination. Moreover, the Collective Bargaining Agreement provides that if an employee does not file a grievance, he or she is deemed to elect to proceed under the rules of the Merit Commission. Yahnke faults the district court for concluding that he was required to file an additional grievance specifically directed at his termination; by Yahnke's reasoning, the October 15 grievance was sufficient to preserve his right to arbitrate his termination and the Sheriff had already conceded that it was sufficient. The Sheriff's later refusal to arbitrate the termination was a reversal of his earlier concession that Yahnke had followed the proper procedures. According to Yahnke, this creates a disputed issue of material fact, namely, why the Sheriff told the Merit Commission that Yahnke had requested arbitration and that the Sheriff therefore would withdraw the Merit Commission charges so that the parties could proceed to arbitration. According to Yahnke, the answer is that the Sheriff

took these actions so that Yahnke would have no means of obtaining a hearing on his termination.

Although there may be a factual dispute regarding why the Sheriff told the Merit Commission that Yahnke was waiving his hearing in favor of arbitration, that dispute is not material to Yahnke's due process claim. It is the actions that Yahnke took and, more importantly, did not take, that led to his procedural bind. A process existed for Yahnke to challenge his termination: he could have had a hearing before the Merit Commission or he could have filed a grievance against his termination and proceeded to arbitration. But he waived the Merit Commission hearing when his union lawyer sent a letter to the Merit Commission, and then he failed to file a grievance that was adequate to challenge his termination. He may have thought that the October 15 grievance was adequate, but by his own concession, and by the findings of the Illinois courts, that grievance was not specifically addressed to the termination, which occurred two weeks after the Step Three Grievance was filed. Yahnke essentially argues the Sheriff's statements that Yahnke had filed his intention to go to arbitration are conclusive on the issue. But the Sheriff's characterization of events to the Merit Commission could neither preserve nor waive Yahnke's arbitration rights. Only Yahnke could preserve his rights, and the Illinois courts found that he failed to do so when he neglected to file a grievance specifically challenging his termination. There is no evidence that the Sheriff prevented him from obtaining a hearing. Due process was available; Yahnke simply failed to perfect his request for arbitration. The district court therefore did not err in granting judgment to the defendants on the due process claim.

### III.

The district court also denied Yahnke's motion to strike the defendants' Local Rule 56.1 Statement of Facts. But the propriety of that decision is now moot in relation to Yahnke's First Amendment claim because we are remanding for trial. As for Yahnke's due process claim, we have relied only on undisputed facts and on Yahnke's version of the facts in affirming the district court's grant of judgment in favor of the defendants. We will therefore not address the issue further. In sum, we vacate the judgment in part and remand for a trial on Yahnke's claim under the First Amendment. We affirm the judgment as to the due process claim. Each party will bear its own costs on appeal.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART.