**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2019
Decided August 27, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-3710

| | |
|---|---|
| DAMEION PERKINS, <br> *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-CV-179-JPS |
| MILWAUKEE COUNTY, *et al.*, <br> *Defendants-Appellees*. | J. P. Stadtmueller, <br> *Judge*. |

**O R D E R**

Dameion Perkins publicly protested after a Milwaukee police officer killed his brother. He later applied for a position with Milwaukee Transit Services, Inc. (MTS), but the company did not hire him. After he learned that a hiring manager had said that MTS would not hire him because of his family's protests, he sued Milwaukee County for violating his First Amendment rights. But Perkins sued the wrong entity, and he lacks evidence that his protected activity was the reason that MTS did not hire him. Thus, we affirm the judgment.

Before turning to the facts, we first address Perkins's argument that the district judge abused his discretion by ruling that Perkins's responses to the defendants'

proposed findings of fact violated the local rules. We review a district judge's decision regarding compliance with local rules for an abuse of discretion. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015).

Eastern District of Wisconsin Local Rule 56 requires a party opposing summary judgment to file "a concise response" to the moving party's statement of facts, "including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." CIV. L.R. 56(b)(i) (E.D. Wis.). In Perkins's disagreements with the defendants' proposed findings of fact, he simply wrote "DENY" and cross-referenced numerous paragraphs from his own proposed facts—often 10–15 of his own paragraphs, and in some places as many as 41 or even all 94. This method left the district judge to piece together the nature of Perkins's objections. The judge concluded that Perkins's response did not comply with the local rules because Perkins did not include any explanation of the basis for his disputes, and he ruled that Perkins therefore had admitted the defendants' facts.

Perkins argues that the judge's ruling of noncompliance in this case was an abuse of discretion because his attorney has responded to motions for summary judgment in this way before multiple other judges in the Eastern District of Wisconsin without issue. But the test for abuse of discretion is not whether the district judge might have decided differently, but whether the judge's ruling was unreasonable. *Eskridge v. Cook Cty.*, 577 F.3d 806, 810 (7th Cir. 2009). District judges are not required to piece together a litigant's arguments, *see D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015), and they are permitted to require strict compliance with local rules, *Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 655 (7th Cir. 2011). Because Perkins did not identify his disagreements with specificity, the district judge did not abuse his discretion by ruling that Perkins had admitted the defendants' statement of facts.

Accepting the defendants' facts as admitted, we recite those facts in the light most favorable to Perkins and draw all inferences in his favor. *Benuzzi*, 647 F.3d at 656.

A Milwaukee police officer killed Perkins's brother, Dontre Hamilton, prompting Perkins to travel the country and speak to the media about police violence against black men. Years later, Perkins applied for a union job with MTS as a bus cleaner/tanker. Milwaukee County contracts with MTS, a private nonprofit company, to operate the Milwaukee County Transit System. MTS, not the County, employs all transit staff.

As part of his application, Perkins had a phone screening with a recruiter at MTS. The recruiter ultimately decided not to continue the hiring process with Perkins because Perkins spoke negatively about his employer. After the call, the recruiter told the hiring manager, Sandra Goins-Jones, about Perkins's familial relationship, which had come up in the phone conversation. Goins-Jones then took Perkins's file from the recruiter and said that MTS would not hire Perkins because MTS is a transportation company and Perkins's family had stopped traffic during their protests.

Goins-Jones discussed Perkins's application with Sylvia Radmer, the director of human resources for MTS, and said that she would not hire Perkins because of his family's protests. Radmer told Goins-Jones that involvement in protests was not an appropriate reason to deny employment.

Weeks later, Goins-Jones repeated to the union president that she could not hire Perkins because of his family's protests. The president relayed this statement to Perkins, who began calling Goins-Jones to follow up on his application. Goins-Jones mentioned these calls to Radmer, and Radmer told her to send Perkins a letter that MTS was considering other candidates.

Perkins also called Radmer and told her that MTS had not hired him because of his family's protests. Radmer consulted with Sandra Kellner, the chief administrative officer of MTS, and the two decided to meet with Perkins to investigate what he had heard. Before the meeting, Radmer reviewed the recruiter's notes from the phone call. Radmer and Kellner then met with Perkins and told him that MTS had not hired him because the recruiter had recommended against it. They also told him that his rejection was not based on his protests or family and that they would investigate why he had been told that it was.

Perkins sued Milwaukee County, Radmer, and Kellner under 42 U.S.C. § 1983 for violating his First Amendment rights of free speech and free association. He did not sue MTS. On the defendants' motion for summary judgment, the judge concluded that Perkins did not show that either Radmer or Kellner set personnel policy and that Perkins therefore could not hold the County liable under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). As for Radmer and Kellner's individual liability, the judge determined that Perkins had not submitted evidence of any specific instance of protected speech and therefore could not establish a prima facie case of retaliation.

On appeal, Perkins argues that the County is the proper defendant under § 1983 because it is the "controlling municipality" of MTS and that MTS is not subject to suit under § 1983 because it is a private company. Perkins is wrong for several reasons. First, Milwaukee County was not involved in the events at issue. Perkins does not appear to dispute this, but nonetheless believes that the County can be held liable simply because it owns the buses and finances MTS. Second, "a private corporation that has contracted to provide essential government services is subject to at least the same rules that apply to public entities," which includes the rules allowing liability for state actors for violating federal constitutional rights. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017); *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Perkins insists that the relationship between the County and MTS allows him to sue the County for the wrongdoing of MTS employees. But the relationship between the two means the opposite: as the operator—and hiring authority—of the transit system, MTS itself can be sued under § 1983. *See Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795 F.2d 591, 597 n.9 (7th Cir. 1986) (in suit *against MTS*, allegation that County owns MTS establishes state action under § 1983 for purposes of motion to dismiss).

This has been pointed out repeatedly to Perkins (and his lawyer) throughout the litigation, but he has held fast to his belief that he had no choice but to sue the County despite its total lack of involvement. The Wisconsin decisions that Perkins cites do not help him, either. They are from cases in which the court was deciding whether the plaintiffs had properly complied with a state statute specific to transit-related personal-injury suits. The statute requires plaintiffs to file notice of their claims with the municipality before suing either MTS or the County. *See* WIS. STAT. §§ 345.05, 893.80; *Blamer v. Milwaukee Cty. Transit Sys.*, 434 N.W.2d 623 (Wis. Ct. App. 1988) (unpublished) (affirming dismissal because plaintiff had not filed required notice with County); *Zinke v. Milwaukee Transp. Servs., Inc.*, 299 N.W.2d 600, 603 (Wis. Ct. App. 1980) (same).

Given the more fundamental problem that Perkins sued the wrong entity, the district judge's and the parties' discussion of *Monell* is immaterial. Because respondeat superior liability does not exist under § 1983, *Monell* permits the liability of a municipal corporation (or its functional equivalent) only if its own policy or custom caused the violation. 436 U.S. at 694. A plaintiff can establish that causation by showing that his rights were violated because of an official policy, an established custom, or a decision by a final policymaker. *Glisson*, 849 F.3d at 379; *Shields*, 746 F.3d at 790. But these avenues to proving causation presuppose that the person who violated the plaintiff's rights is an agent of the defendant entity. No matter which person—Radmer, Kellner, Goins-Jones, or the recruiter—is responsible for the allegedly unconstitutional rejection

of Perkins's employment application, that person worked for MTS, not the County. Nothing in *Monell* changes the fundamental principle that the defendant in a § 1983 suit must have been personally involved in the deprivation of a constitutional right. *See Wilson v. Warren Cty.*, 830 F.3d 464, 469 (7th Cir. 2016). Only MTS employees or MTS itself, by virtue of an official policy, could satisfy that requirement in this case. But Perkins has deliberately chosen not to sue MTS, however ill-advised that strategy.

Next, Perkins argues that summary judgment for Radmer and Kellner was improper because they participated in and ratified the decision not to hire him because he engaged in protected activity. To succeed on a First Amendment retaliation claim under § 1983, Perkins must show that (1) he engaged in constitutionally protected speech; (2) he "suffered a deprivation likely to deter free speech"; and (3) his speech was a motivating factor in the employer's decision. *Yahnke v. Kane Cty.*, 823 F.3d 1066, 1070 (7th Cir. 2016). The parties do not dispute the second element.

Faced with the defendants' argument that Perkins did not submit any evidence about protected activity, Perkins points to his testimony that he made public appearances and spoke about police violence. He also asks us to take judicial notice of four news stories that mention his name and discuss the protests. Media reports offered for the truth of the matter asserted—that Perkins engaged in protected speech—are inadmissible hearsay. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013). And if they are offered for another purpose, such as showing the defendants' state of mind when they rejected Perkins's employment application, Perkins would need to establish that the defendants had seen them. *See Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 (7th Cir. 2011). Either way, he cannot submit new evidence opposing summary judgment for the first time on appeal. *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015).

Regardless, Perkins did not raise any genuine issue of material fact with respect to whether his protected speech motivated either Radmer or Kellner to nix his hiring— to the extent that either was responsible for the hiring decision. The evidence shows that Radmer consistently *opposed* considering Perkins's First Amendment activity in the hiring process and directed Goins-Jones not to take it into account. Kellner was not involved in any of the early decisions. When Radmer and Kellner finally reviewed Perkins's application and the recruiter's notes and met with Perkins, they supported, for non-retaliatory reasons, the decision not to hire him. Therefore, Perkins did not submit sufficient evidence for a reasonable jury to find a causal connection between his protests

and MTS's hiring decision, and summary judgment with respect to the individual defendants was appropriate. *See Massey v. Johnson*, 457 F.3d 711, 718–19 (7th Cir. 2006).

AFFIRMED