In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1731

DEBRA EATON,

*Plaintiff-Appellant,*

*v.*

J. H. FINDORFF & SON, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:19-cv-00282-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED OCTOBER 26, 2020 — DECIDED JUNE 16, 2021

Before EASTERBROOK, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* Debra Eaton brought a Title VII
claim against J.H. Findorff & Son, Inc. ("Findorff"), asserting
that the company twice refused to hire her in retaliation for an
earlier sex discrimination charge that she had leveled against
the company. *See* 42 U.S.C. § 2000e-3(a). The district court
granted summary judgment in favor of Findorff and we affirm.

**I.**

Eaton is an operating engineer and a member of the International Union of Operating Engineers Local 139 ("Local 139"). Findorff is a construction company that contracts with unions in order to staff its job sites. Eaton was an apprentice when she first interacted with Findorff in March 2011. On that occasion, Local 139 dispatched her to Findorff to work as a telehandler operator at a job site in Milwaukee known as the Moderne Project.[1] At the end of Eaton's first day on the Moderne Project, Findorff's Project Superintendent, Mark Szymkowski, terminated Eaton after concluding that her operation of the telehandler was unsafe and that she was inadequately trained. Local 139 filed a grievance on her behalf. To resolve the grievance, Szymkowski and Mark Schneider, Findorff's General Superintendent, agreed that Findorff would hire Eaton as a skip hoist operator when that position became available.[2]

The skip hoist position became available on the Moderne Project in August 2011, and Findorff hired Eaton as promised. In addition to running the skip hoist, Eaton was tasked with picking up trash that accumulated throughout the day on the various floors of the building. Because Eaton was an apprentice and was trying to attain journeyman status, she was required to submit on-the-job-training reports ("Reports") to Local 139.

---

[1] A telehandler is a large, telescopic forklift.

[2] A skip hoist is an elevator that is erected on the outside of a building under construction. The skip hoist transports personnel and materials from floor to floor until an internal elevator system is completed.

Szymkowski filled out the Reports for her, rating her on a scale from 1 to 5 on her skills as an apprentice skip hoist operator, with 1 indicating "unacceptable" skills, 3 marking "average" competence, and 5 identifying "excellent" performance. Szymkowski privately told Eaton that she was slow and inefficient in her operation of the skip hoist, complained that she passed up workers waiting to be picked up, and also criticized her for failing to pick up trash consistently. Nevertheless, he rated her an average apprentice when filling out the Reports, which addressed only her technical skills in operating the skip hoist.

In late 2011, Findorff eliminated the night shift on the Moderne Project and found itself overstaffed with operators. Instead of permanently laying off operators, the company implemented a rotating layoff schedule, where different operators were laid off each week in turn. Eaton was told that her turn for layoff would be January 2 to January 6, 2012. The other two skip hoist operators, both men, were allowed to work that week. On January 27, 2012, Eaton filed a charge with the EEOC alleging that her layoff amounted to discrimination on the basis of sex. Sonny Femal, Findorff's safety and compliance officer, told Szymkowski that Eaton had filed a grievance related to her temporary layoff, but Femal never told Szymkowski that Eaton's complaint was based on sex discrimination. Eaton never discussed the complaint with Szymkowski, and after she failed to pursue her complaint, it was dismissed. Eaton continued to work as a skip hoist operator at the Moderne Project through the end of August 2012. At that point, Findorff no longer needed a skip hoist operator and her employment was terminated.

Five years later, in the summer of 2017, Eaton heard from Louis Rupert, a Findorff laborer, that the company had an open position for an operating engineer. At Rupert's suggestion, Eaton spoke to Jeff Tramel, the superintendent at Rupert's job site, and he directed her to Schneider. Schneider told Eaton that there were no open operating engineer positions. Eaton nevertheless decided to drop off her resume at Findorff, and filled out an application in case a position opened up. Findorff's receptionist, Samantha Garni, received the application. Garni was not aware of any open positions, but on seeing from Eaton's application that she had previously worked for Findorff, Garni asked Szymkowski if he would be interested in rehiring her in the future. He replied that he would not rehire her or that he would not recommend her.

In April 2018, a position did open up at a Findorff job site. Guy Yuker, a business associate for Local 139, told Garni that he was dispatching Eaton for the job of elevator operator. Recalling her conversation with Szymkowski, Garni contacted Kim Norton, Findorff's operations specialist, and said that she did not believe that Findorff would hire Eaton for the operator position. Norton then asked Yuker to send an alternate operator, and Yuker requested that Findorff send Local 139 a letter explaining why it did not wish to hire Eaton. Norton consulted with Schneider and Szymkowski before sending the letter. Szymkowski reported that Eaton was a "subpar" skip hoist operator and that Findorff should probably look for someone else. Norton then prepared and sent a letter to Local 139, declining to hire Eaton due to past performance issues. Yuker conveyed this information to Eaton, and Local 139 no longer referred Eaton to Findorff for work.

Eaton then filed a charge of discrimination with the EEOC in April 2018. After receiving a right-to-sue letter from the EEOC, Eaton filed this suit, claiming both sex-based discrimination and retaliation for having previously complained of sex-based discrimination at Findorff. The district court granted summary judgment in favor of Findorff, finding that Eaton had waived her sex discrimination charge, and that she failed to produce sufficient evidence in support of her retaliation claim. Only the retaliation claim is at issue in this appeal.

## II.

We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to Eaton and construing all reasonable inferences from the evidence in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Consolino v. Towne*, 872 F.3d 825, 829 (7th Cir. 2017). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson*, 477 U.S. at 256; *Consolino*, 872 F.3d at 829. In order to make out a claim for retaliation, a plaintiff must demonstrate (1) that she engaged in statutorily protected activity; (2) that her employer took a materially adverse action against her; and (3) that the protected activity and the adverse action are causally connected. *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018); *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016); 42 U.S.C. § 2000e-3(a). To prove causation, the plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action." *Gracia*, 842 F.3d at 1019 (quoting *University of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S.

338, 352 (2013)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360.

Construing the evidence in favor of Eaton, the parties agree that, for the purposes of summary judgment, she has adequately demonstrated that she engaged in statutorily protected activity when she filed her 2012 discrimination charge, and that Findorff took a materially adverse action against her in 2018 when it refused to hire her. On appeal, Eaton argues that Findorff's failure to hire her in 2017 also constituted a materially adverse action, and she maintains that she has also demonstrated that her protected activity and Findorff's adverse actions are causally connected.

We can address the 2017 failure-to-hire in short order: Findorff has produced evidence that there were no operator positions available in 2017, and Eaton has failed to offer any evidence to dispute that conclusion.[3] On appeal, she claims only that Garni's 2017 conversation with Szymkowski caused her not to be considered for any future job prospects and that this was, in and of itself, an adverse action. But until any openings became available, she suffered no harm and there was

---

[3] Findorff produced sworn statements that there were no operator positions open when Eaton applied in 2017. Eaton's testimony that Louis Rupert told her that there was an opening cannot overcome this sworn testimony because it is inadmissible hearsay. Rupert was not deposed and Eaton did not obtain an affidavit from him. Inadmissible hearsay evidence may not be considered on summary judgment. Fed. R. Civ. P. 56(c)(2); *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016).

no adverse *action*. Without any evidence that she was denied an open position in 2017, that claim fails.

We turn to whether Eaton has produced any evidence of causation for Findorff's 2018 refusal to hire her. Specifically, we consider whether Eaton has any evidence from which a trier of fact could conclude that Eaton's 2012 claim of discrimination against Findorff was the but-for cause of Findorff's refusal to hire her in 2018. We conclude, as did the district court, that she has no such evidence. Findorff produced undisputed evidence that Szymkowski and Schneider, the decision-makers who determined that Eaton would not be hired again, did not know that her 2012 complaint was based on discrimination. Femal, the person who handled the complaint for the company, told Szymkowski only that Eaton had complained about the layoff, and did not convey the nature or basis of the complaint. Szymkowski believed that Eaton had filed a union grievance, as she had done in 2011 when she was terminated from the telehandler job after one day. Eaton herself never told Szymkowski about the grounds for her complaint.

On appeal, Eaton argues that Findorff responded to her 2012 complaint, and that because Szymkowski and Schneider were the decision-makers, the company must have consulted them about the complaint, and must have informed them that it was based on sex discrimination. In order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity. *Emerson v. Dart*, 900 F.3d 469, 472 (7th Cir. 2018); *Consolino*, 872 F.3d at 830; *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009). It is not sufficient that a

decision-maker could have or even should have known about the employee's complaint. *Nagle*, 554 F.3d at 1122. *See also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668–69 (7th Cir.2006) (if an employer did not know the plaintiff engaged in statutorily protected activity, the employer cannot be trying to penalize the employee for engaging in that activity). At best, Eaton argues that Szymkowski and Schneider must have known or should have known that her 2012 complaint was based on sex discrimination because the company responded to her complaint. But both Schneider and Szymkowski offered sworn testimony that they did not know that Eaton's complaint about the one-week layoff was based on sex discrimination. Imputing the company's knowledge or Femal's knowledge to Szymkowski or Schneider is based on speculation and cannot overcome the undisputed record evidence that: (1) neither Femal nor Eaton herself told the decision-makers the basis of Eaton's complaint; and (2) neither Schneider nor Szymkowski knew that Eaton's complaint was based on sex discrimination. *Emerson*, 900 F.3d at 473 (a finding of retaliatory intent must be based on something other than speculation); *Consolino*, 872 F.3d at 830 (speculation is not enough to create a genuine issue of fact for the purposes of summary judgment). Because Eaton lacks any evidence that the decision-makers knew that she had engaged in protected activity, she has failed to raise a genuine issue of material fact in support of causation for her retaliation claim. The district court correctly granted summary judgment in favor of Findorff.

AFFIRMED.