In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-2092

KENNETH E. NELSON,

*Plaintiff-Appellant,*

*v.*

BRUCE R. SCHULTZ and JON K. RODGERS,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 8560 — **Harry D. Leinenweber**, *Judge.*

ARGUED NOVEMBER 15, 2017 — DECIDED DECEMBER 21, 2017

Before WOOD, *Chief Judge*, and MANION and KANNE,
*Circuit Judges*.

PER CURIAM. Kenneth Nelson sued two former business
partners, Bruce Schultz and Jon Rodgers, for breach of con-
tract and several torts. During discovery Schultz and Rodgers
asked Nelson to produce various bank statements and tax re-
turns, which, the defendants said, they needed to defend
against his claims. After Nelson refused, the district court
granted the defendants' motion to compel their production

and warned him, twice, that it would dismiss the case if he did not produce the documents or provide an affidavit documenting a diligent search for them. Nelson did neither, and the judge dismissed the case for want of prosecution. On appeal Nelson argues that the district judge erred by not assessing whether his misconduct justified dismissing the case. Because the judge sufficiently evaluated this matter and did not abuse his discretion by dismissing the suit after multiple warnings, we affirm.

This dispute began when Nelson, Schultz, and Rodgers formed an LLC to develop a property in Downtown Chicago. In mid-2005 they created 664 N. Michigan, LLC, which, according to Nelson, they formed in order to develop the Ritz-Carlton Residences, a mixed-use luxury skyscraper on the Magnificent Mile. The LLC's operating agreement provided that development fees would be divided among the LLC's managers "as they mutually agree" and that a manager of the LLC could be removed for cause by a majority vote of the LLC's owners. According to Nelson, the LLC's managers were Nelson Hotels, Inc. (Nelson was its president) and Prism Construction Management, owned by Schultz and Rodgers.

In late 2005, Rodgers and Schultz voted to remove Nelson Hotels, Inc. as an LLC manager, which, according to Nelson, caused his company lose out on $1.13 million when the Ritz-Carlton Residences was built. Nelson asserts that Schultz and Rodgers removed his company as a manager to enrich themselves; they justified their decision, however, on grounds that he had a negative $15 million net worth that prevented the LLC from getting financing for the development.

Ten years later Nelson sued Schultz and Rodgers for breach of contract, unjust enrichment, breach of fiduciary

duty, and conversion. After Nelson's lawsuit survived the defendants' motion to dismiss, the parties proceeded to discovery.

Schultz and Rodgers sought to gather evidence to support their defense that Nelson's company had been removed as an LLC manager for cause—Nelson's poor finances obstructed the project's financing—and to examine whether Nelson mitigated his damages from the alleged contract breach. They asked Nelson to produce his and his company's tax returns for the previous ten years as well as his and his company's loan applications and financial statements between 2004 and 2008. Nelson refused, arguing that he did not guarantee his "creditworthiness" when his company became one of the LLC's managers and that many of the requested documents fell outside of the relevant period for mitigating damages. On the defendants' motion, the judge compelled the disclosure of the requested documents. The judge reasoned that until he ruled on these documents' relevance, the defendants should receive them so that they could prepare their defense.

In response Nelson stated that, for almost all of the requested documents, he "believed" that they had been produced and that he was "not in possession" of them. The defendants then moved for sanctions under Federal Rule of Civil Procedure 37(b)(2)(A)(v), asking the judge to dismiss the case because Nelson's reply was "non-responsive and evasive." On the day before the hearing on the defendants' sanctions motion, Nelson sent the defendants copies of his tax transcripts (partial records of his tax returns) for 2006 through 2011.

At the first hearing on their sanctions motion, the defendants asserted that Nelson's tax transcripts were inadequate

substitutes for his tax returns and that they still had not received the requested bank statements. The judge agreed and told Nelson that he had "one more chance" to produce the requested documents or else he was "going to probably dismiss it for want of prosecution." The judge added that if Nelson did not have some of the requested documents, he should provide "a crystal-clear affidavit" stating the actions that he and his attorney took to locate them.

Before the next production deadline, Nelson produced only one of the requested tax documents and provided a declaration that largely copied his response to the defendants' first production request. This declaration included Nelson's assertion that the requested documents "in possession, custody, or control of Nelson from 2004–2008 are believed to have been produced. For these years, Nelson is not in possession of these documents."

At the second hearing on their sanctions motion, the defendants argued that Nelson's declaration, like his response to their first production request, was self-contradictory—Nelson said that he produced the requested documents but also that he did not have them. Nelson's counsel responded that he misinterpreted the judge's previous order to produce the documents. The judge then gave Nelson five additional weeks either to produce the requested documents or provide an affidavit stating that he did not have them despite a diligent search. The judge closed the hearing with a second warning: "If you don't show a very, very, very substantial effort to comply, then I'm going to probably dismiss the complaint for want of prosecution."

Nelson did not produce any documents by the next deadline. One month after the deadline, Nelson forwarded the defendants an email he had received from his company's bank, which said that it kept records going back only seven years. Nelson also provided a second declaration that generally mirrored his first one.

At the third hearing on the defendants' sanctions motion, the defendants argued that Nelson's second declaration was "completely evasive" because, as was the case with his first declaration, the second one stated that he produced the documents to the extent he had them but also that he was "not in possession … . of these documents." The defendants added that the statement from Nelson's bank was incomplete because Nelson did not declare that it was the only bank he used during the relevant period. Nelson responded by telling the judge that after "mov[ing] several times in the past years," he did not have his tax returns or bank records from 2004 through 2008.

The judge then dismissed the case using language that alluded to both Federal Rules of Civil Procedure 37(b) and 41(b). He appeared to grant the defendants' Rule 37(b) motion, saying that it was "well taken," but then, apparently referencing Rule 41(b), explained that he dismissed the case "for want of prosecution as a sanction against the failure to cooperate in discovery." Likewise the judgment states that the judge dismissed the case for "want of prosecution" and reached this decision "on a motion," an apparent reference to the defendants' Rule 37(b) motion.

Nelson then moved for reconsideration, arguing that the judge erred by dismissing his case without considering lesser

sanctions or the merits of his claims. The judge denied the motion. He concluded that he permissibly dismissed the suit because Nelson, despite receiving multiple warnings about the possibility of this sanction being imposed, had engaged in a "pattern of dilatory conduct" by failing "either to produce the records or declare that a reasonable search revealed nothing more."

On appeal Nelson argues that the district judge erred by failing to analyze whether the sanction was proportionate to his misconduct. He contends that before dismissing this suit, the judge was required to consider its merits and the magnitude of his misconduct, which, he says, weigh in favor of a lesser sanction.

As an initial matter, there is some confusion whether the judge dismissed this case under Rule 37(b) or Rule 41(b). But this confusion did not affect his determination of whether dismissal was a proportionate sanction for Nelson's misconduct. Both rules require that judges tailor sanctions to the severity of plaintiffs' misconduct, *see Johnson v. Chi. Bd. of Educ.*, 718 F.3d 731, 732–33 (7th Cir. 2013) (Rule 41(b) proportionality requirement), *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (Rule 37 proportionality requirement), and here, the judge satisfied both rules' proportionality requirements.

The judge complied with Rule 37(b)'s proportionality requirement by showing that he evaluated the appropriateness of dismissal based on Nelson's noncompliance with several discovery orders. *See Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 190 (7th Cir. 2011); *Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 724 (7th Cir. 2008) (requiring district court to as-

sess whether dismissal is "an appropriate sanction" for "discovery violations"). At the final hearing on the defendants' sanctions motion, the judge stated that dismissal was warranted because of Nelson's "failure to cooperate in discovery." Moreover, in denying Nelson's motion for reconsideration, the judge said that Nelson's "pattern of dilatory conduct" despite two warnings justified dismissal. The judge did not abuse his discretion in making this evaluation because Nelson's discovery violations were willful and repeated. *See Negrete*, 547 F.3d at 724. Although the judge did not make this finding explicitly, we "infer it … from the sanction order itself." *Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 909 (7th Cir. 2003). As the judge observed, Nelson did not cooperate in discovery. Despite three orders and two last-chance warnings, he did not produce the documents or provide a declaration stating that he could not find them after a diligent search.

Even if we construe the judge's dismissal as arising under Rule 41(b), Nelson fares no better. To evaluate the proportionality of dismissing a case under this rule, a district judge must assess whether the plaintiff's "neglect in pursuing his case was sufficiently serious to warrant dismissal." *McInnis v. Duncan*, 697 F.3d 661, 664 (7th Cir. 2012); *see also Aura Lamp*, 325 F.3d at 909 (evaluating district judge's conclusion that dismissal was "only effective sanction at the time"). The judge's statements that he dismissed this case for Nelson's "failure to cooperate in discovery" and "pattern of dilatory conduct" show that he made this assessment. And the judge did not abuse his discretion in making this assessment because Nelson's violations of the court's discovery orders constituted a "pattern of failure to meet court-imposed deadlines." *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1117

(7th Cir. 1994). Further, regarding the considerations that Nelson says weigh in favor of a lesser sanction, they are merely "factors that are relevant to the district court's decision," *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011); a judge is not bound to evaluate them expressly. *See Aura Lamp*, 325 F.3d at 908 (identifying "principles" that "[i]deally, the district court should consider"); *Ball v. City of Chi.*, 2 F.3d 752, 759–60 (7th Cir. 1993) (same).

Nelson next argues that the district judge needed to consider lesser sanctions before dismissing the case. He is correct that the judge did not expressly evaluate this matter. But while district judges should weigh lesser sanctions before dismissing a case, they are not required to. *See McInnis*, 697 F.3d at 665; *Aura Lamp*, 325 F.3d at 908–09. Given that the district judge permissibly concluded that Nelson's misconduct warranted dismissal, it did not matter that the judge did not consider lesser sanctions first.

The judgment of the district court is AFFIRMED.