In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2614

PAULA EMERSON,

*Plaintiff-Appellant,*

*v.*

THOMAS J. DART,
Sheriff of Cook County, Illinois;
COOK COUNTY, ILLINOIS; WILLIAM
ZURELLA; and DAVID GROCHOWSKI;

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14 C 5898 — **Milton I. Shadur**, *Judge.*

ARGUED MAY 30, 2018 — DECIDED AUGUST 14, 2018

Before WOOD, *Chief Judge*, and SYKES and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Paula Emerson is a correctional officer on leave from the Cook County Department of Corrections. She alleges that two County employees unlawfully discriminated against her during her tenure at one of the

County's detention facilities. While litigation was underway, Emerson took to Facebook to threaten potential witnesses with legal action if they testified against her. The district judge sanctioned Emerson for the threat and eventually entered summary judgment for the defendants. We affirm.

## I. Background

The Cook County Department of Corrections hired Emerson as a correctional officer in April 2005. Years later she transferred to what the parties call "Division 9," a county-run detention unit that houses maximum-security inmates. Emerson had several duties while there. Primarily she monitored the inmates' activities and accompanied them to meals and other events. She also cleaned cells, common areas, and restroom facilities on occasion.

Emerson's tenure at the division was tumultuous, to say the least. She frequently butted heads with her colleagues and twice filed formal personnel grievances. The first, in 2009, accused two division employees—identified only as Lieutenant Young and Officer Heilemann—of racial and sexual harassment. The second, in 2012, alleged that Lieutenant David Grochowski improperly changed Emerson's shift assignments. The record shows that both claims failed: the 2009 grievance was dismissed in 2011, and nothing came of the 2012 complaint.

That's not the end of the story. Emerson claims Grochowski and Sergeant William Zurella, another division supervisor, retaliated against her for filing the grievances. Grochowski allegedly continued to reassign Emerson's shifts, made malicious comments about her to other employees, and twice assigned her to work alongside Heilemann, a

target of her 2009 complaint. As to Zurella, Emerson claims he failed to assist her while she was supervising a group of inmates in early September 2012. These incidents prompted Emerson to take a leave of absence; she was on paid medical leave from September 2012 until March 2014, and she has remained on unpaid leave ever since.

Emerson sued Grochowski, Zurella, Thomas Dart (he is the Cook County Sheriff and had no personal involvement, so we mention him no further), and Cook County. She alleges retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The litigation proceeded to discovery, and Emerson came to resent the County's efforts to gather evidence and rebut her case. So she took matters into her own hands. Posting to a Facebook group shared by more than 1,600 employees of the Department of Corrections, Emerson threatened to sue anyone who testified against her. She wrote:

> To my fellow officers! DON'T GET IN A FIGHT THAT IS NOT, I REPEAT THAT IS NOT YOURS. I'VE JUST RECEIVED THE NAMES OF SOME PEOPLE THAT THE COUNTY IS ATTEMPTING TO USE AS WITNESSES, (1) IS A SGT, (2) OFFICERS, (1) OPR INVESTIGATOR, on the job 18mths, this fight is from 2009 & I've been off since 2012, sooooo do the math. Yes, I will definitely put your name out there in due time ☺. This is a PSA for those of you still believing that being a liar, brown noser will get you something. MESSING WITH ME WILL GET YOU YOUR OWN CERTIFIED MAIL. SO GLAD THAT

THE   ARROGANCE   OF   THIS   EMPLOYER
HAS THEM BELIEVING THEIR OWN 💩

In response the County moved for sanctions against
Emerson, and the district judge granted the motion. He
ordered Emerson to pay the County just under $17,000 as
compensation for the time it spent opposing her misconduct.

Discovery continued without further drama, and soon
the defendants moved for summary judgment. The judge
granted that motion as well. He first concluded that
Emerson's 2012 grievance didn't qualify as protected activity
under Title VII because it did not allege that Grochowski
targeted her because of her race, sex, or other protected
characteristic. As to the 2009 grievance, the judge deter-
mined that Emerson's claim lacked a key piece of evidence.
She had no proof that Grochowski and Zurella ever knew of
the grievance, so she couldn't establish that they harbored
the retaliatory motive necessary for a Title VII retaliation
claim.

## II. Discussion

Emerson challenges both the summary judgment and the
award of sanctions. We review the first de novo, *Valenti v.
Lawson*, 889 F.3d 427, 429 (7th Cir. 2018), and the second for
abuse of discretion, *Salmeron v. Enter. Recovery Sys., Inc.*,
579 F.3d 787, 793 (7th Cir. 2009).

### A. Title VII Claim

To state a retaliation claim under Title VII, "the plaintiff
must prove that he engaged in protected activity and
suffered an adverse employment action, and that there is a
causal link between the two." *Lord v. High Voltage Software,*

*Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Emerson falls far short of establishing this prima facie case.

She first argues that both of her personnel grievances qualify as "protected activity" under Title VII. That's only half right. "Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate [that] the discrimination occurred because of sex, race, national origin, or some other protected class." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). The 2009 grievance includes these kinds of allegations, but the 2012 claim does not. In fact, Emerson admits her second grievance did not "claim that what happened to [her] was due to race, color, national origin, sex, or religion." So if Emerson has a Title VII retaliation claim, it must rest on the 2009 grievance alone.

That presents a second obstacle: Grochowski's and Zurella's alleged misdeeds count as retaliation only if they had actual knowledge of the 2009 grievance. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009). Emerson has no evidence that they did. Grochowski and Zurella weren't named in the grievance, Emerson admits she never spoke to either of them about it, and Zurella started working at Division 9 more than two years after Emerson filed her claim. On this record no reasonable jury could conclude that Grochowski or Zurella retaliated against Emerson because of the 2009 complaint.

Emerson has one argument in reply. She asks us to impute actual knowledge to Grochowski because he twice assigned her to work with Heilemann, a target of her 2009 grievance. That's not enough to defeat summary judgment. While we draw "*reasonable* inferences" in Emerson's favor,

*Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 459 (7th Cir. 1999) (emphasis added), finding retaliatory intent on this fact alone would be unvarnished "speculation," *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017). Emerson's assertion is a mere guess among the many reasons Grochowski could have assigned her to work alongside Heilemann. And given the other evidence, a mundane explanation stands head and shoulders above the rest: Grochowski had no knowledge of Emerson's 2012 grievance, so he thought little of scheduling her to work with Heilemann when operational need arose.

## B. Motion for Sanctions

District courts have broad authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). "Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron*, 579 F.3d at 793. The district judge reasonably concluded that Emerson's Facebook post merited sanctions under these standards. She targeted and publicly threatened potential witnesses if they spoke out.

Emerson's arguments to the contrary border on preposterous. She first claims that her pledge to serve "certified mail" on those who "mess" with her is ambiguous. We see no ambiguity, and neither did Emerson's intended targets. The County introduced evidence that at least one witness felt threatened by the post and agreed to testify only by declaration under seal. Next, Emerson argues that her Facebook post "can be read fairly as an open call to the union members to testify truthfully" because she threatened only "liars" with legal action. That's nonsensical. Emerson's

post was a bald effort to "keep witnesses from testifying," *United States v. Rand*, 482 F.3d 943, 950 (7th Cir. 2007), and we have long held that "witness tampering is among the most grave abuses of the judicial process," *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016).

Finally, Emerson challenges the amount of the sanctions award even if it is otherwise proper. This argument has nothing to it. The County submitted a detailed report of the time spent litigating the sanctions issue, and it also submitted an affidavit in support of a proposed hourly rate. The judge calculated the sanction by multiplying these together. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (noting a "strong presumption" that this lodestar calculation method "yields a reasonable attorneys' fee award"). Emerson does not offer a shred of evidence or argument to explain why this was improper. It is her burden to do so, and we will not rescue her on appeal. *See Soler v. Waite*, 989 F.2d 251, 253 (7th Cir. 1993) ("The appellant bears the burden of proving the abuse of discretion.").

AFFIRMED.