In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-3308

CHADRICK FULKS,

*Plaintiff-Appellant,*

*v.*

T. J. WATSON, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:19-cv-00501-JPH-MG — **James P. Hanlon**, *Judge.*

ARGUED SEPTEMBER 26, 2023 — DECIDED DECEMBER 13, 2023

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges.*

WOOD, *Circuit Judge*. Chadrick Fulks is an inmate consigned to the death-row section of the United States Penitentiary in Terre Haute, Indiana. The present litigation concerns his allegations of constitutionally deficient medical care, the use of excessive force, and a sexual assault. He sued several defendants, but the district court concluded that he had successfully exhausted his administrative remedies with respect to only two claims. The record on exhaustion was otherwise

not so clear, and so the court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). At that point, a more serious problem arose: the court found that Fulks had knowingly proffered a forged document and perjured testimony. As a sanction for this egregious misconduct, the court dismissed the entire action with prejudice. We affirm.

**I**

We can be brief about the underlying lawsuit. Fulks alleges that in September 2018, after his capital-defense attorneys complained about the adequacy of the medical care Fulks was receiving for his chronic back issues, Dr. William Wilson (who was then the Medical Director at the Penitentiary) drugged him, and while Fulks was incapacitated, sexually assaulted him. Immediately afterwards, Fulks was able to grab three paper towels that Dr. Wilson had used to clean up; he intended to use them as evidence of the assault, but they eventually were confiscated. Fulks promptly filed grievances against two prison employees, Lieutenant J. Sherman and Nurse Michelle Smith, and he alerted a sexual assault reporting service, his attorneys, and his spiritual advisor about the alleged incident. He also called a sexual assault hotline and wrote to the U.S. Attorney's Office.

Later that month, Fulks complained to the Bureau of Prisons that Dr. Wilson had failed to treat his back pain and had not provided needed medication for him. Then-Acting Complex Warden T.J. Watson denied the grievance, and the Bureau's Regional Director affirmed that decision. Fulks appealed to the Bureau's Central Office. This time, he again sought medication for his back pain, but he also detailed his sexual assault allegation against Dr. Wilson. The Central Office's Administrator of National Inmate Appeals found no

flaw in the doctor's decision not to prescribe medication; it referred the allegation of sexual assault to the appropriate office for review.

In October 2019, Fulks (acting *pro se*) initiated this lawsuit against six prison officials: Warden Watson, Clinical Director Wilson, Lieutenant Sherman, Nurse Smith, and Officers Aaron Johnson and Bradley Hammon. Fulks asked to proceed *in forma pauperis*, and the district court granted his motion. His complaint raised a number of claims, not all of which were related to one another. He relied for the most part on the private right of action supplied by *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).[1]

The defendants moved to dismiss all but his Eighth Amendment claims against Dr. Wilson for the alleged assault and failure to treat his chronic back pain. Specifically, they contended that the following counts failed to state a claim upon which relief could be granted: (1) a claim under the Religious Freedom Restoration Act (RFRA) against the Warden; (2) an Eighth Amendment excessive-force claim against Officer Hammon; (3) an Eighth Amendment failure-to-protect claim against the Warden and Officer Johnson; and (4) Eighth Amendment claims for deficient medical care against the Warden, Lieutenant Sherman, and Nurse Smith. At that point, the court recruited counsel to represent Fulks.

In support of their motion, the defendants argued that Fulks's allegations of retaliation and unconstitutional

---

[1] Fulks also sought injunctive relief against Dr. Wilson and the Warden (now Steve Kallis) acting in their official capacities. This appeal does not concern that request. The claims that are relevant here are against the defendants in their personal capacities.

conditions of confinement lay outside the traditional scope of the *Bivens* remedy, and that special factors counseled against extending *Bivens* to cover them. See *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017). With the assistance of recruited counsel, Fulks pushed back, but the district court, applying *Abbasi*, decided it had to dismiss those two counts.

This left four claims: the Eighth Amendment excessive-force allegation against Officer Hammon; the Eighth Amendment failure-to-protect claims against Warden Watson and Officer Johnson; the Eighth Amendment claims against Nurse Smith, Lieutenant Sherman, and Warden Watson for failing to provide proper care after the alleged assault; and a RFRA claim against the Warden. With respect to each of these, the defendants argued that they were entitled to summary judgment because Fulks had failed to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). See 28 C.F.R. § 542.10 *et seq.* The court concluded that Fulks had not exhausted the RFRA claim, and so it dismissed that one without further ado. It permitted the Eighth Amendment claims against Dr. Wilson for the alleged assault and failure to provide proper medical care to go forward. The remaining claims (that is, those resting on excessive force, failure to protect, and failure to provide proper care after the assault) required a *Pavey* hearing.

## II

The parties engaged in limited discovery before the hearing.[2] The key question was not whether Fulks exhausted his

---

[2] Attorney Mark Crandley was recruited to represent Fulks after the district court scheduled the *Pavey* hearing, and he has continued to assist

remedies—he did not. What he needed to do instead was to demonstrate that the Bureau's administrative remedy program was functionally unavailable to him. If that were true, then he could proceed with his action. *Ross v. Blake*, 578 U.S. 632 (2016). In order to support this critical argument, he offered into evidence a photocopied document that he alleged was a grievance form, known as a BP-8, that he had tried to submit to prison officials. At the bottom of the document was a handwritten note: "This is not a grievable issue."

The defendants challenged the authenticity of that form. They presented a supplemental affidavit from a prison official who screens BP-8s at the Penitentiary. That official swore that he recognized the handwriting on the form as his own and that he had written it on a piece of blue paper and attached it to an unrelated BP-8 that Fulks had tried unsuccessfully to submit.

The *Pavey* hearing took place in April 2022. At a cost exceeding $8,000, the defendants retained an expert in the field of forensic document examination, Grant Sperry. Referring to the three versions of the contested statement we have set out below, Sperry testified that the handwritten note on the purported BP-8 (item 1) originated from the writing on the blue paper (item 2), and that the forgery could easily have been accomplished by anyone familiar with a copy machine. Here is the graphic he used; to facilitate comparison, the third image superimposes item 1 over item 2.

---

with this appeal. We thank Mr. Crandley and his firm for their efforts on behalf of their client and the court.



Despite this evidence, Fulks persisted in his story that he neither forged the purported BP-8 nor asked anyone to do so on his behalf.

The district court concluded that the purported BP-8 was indeed forged. As for the claims that had prompted the *Pavey* hearing, it ruled that the Bureau's administrative processes were available to Fulks and that he had failed to exhaust those remedies. It thus dismissed those claims.

But there was more. The court found that Fulks "knowingly presented a forged document to the Court and presented perjured testimony when he testified that he did not forge it or ask someone to forge it on his behalf." It ordered Fulks to show cause why his case should not be dismissed with prejudice. Fulks made no such showing, and so the court

determined that the appropriate sanction for his litigation misconduct was to dismiss the entire action with prejudice.

On appeal, Fulks wisely does not contest the district court's factual findings; he argues only that the court abused its discretion by sweeping away his sexual assault claim against Dr. Wilson along with the rest of the case.

### III

As we have noted before, "perjury is among the worst kinds of misconduct." *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014). "Dismissal can [thus] be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015). Fulks submitted the forged document in response to a dispositive pretrial motion and, despite ample opportunity to withdraw his unexhausted claims, he lied at the *Pavey* hearing when he insisted that the document was genuine. By so doing, he "undermined the function of § 1997e(a) in promoting alternative dispute resolution." *Rivera*, 767 F.3d at 686. Worse, he set in motion a serious waste of resources both on the government's part and on the court's. Because of his dishonesty, the district court recruited counsel and the defendants devoted time and energy to a hearing that could have been avoided. The defendants spent over $8,000 to retain an expert to analyze the purported BP-8 and refute Fulks's false testimony. It was well within the district court's discretion to conclude that dismissal was a sanction "proportionate to the circumstances." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019).

The district court properly considered other sanctions before settling on dismissal. See *Rivera*, 767 F.3d at 686. It assessed Fulks's proposed alternatives and found them all to be wanting. Dismissing only the claims to which the forged document was relevant would have been "no sanction at all," because they had been dismissed for failure to exhaust anyway. *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022). Monetary sanctions would have been ineffective because Fulks is proceeding *in forma pauperis* and lives on death row. See *Rivera*, 767 F.3d at 687. And the court reasonably decided not to rely on the hope that the Bureau would somehow punish Fulks for his actions, because the judiciary has an interest in preserving the integrity of its own proceedings. *Cf. Secrease*, 800 F.3d at 401.

Fulks now proposes three additional sanctions that would have been appropriate. But these proposals come too late in the day, and their mere existence does not show that the court abused its discretion in the measure it chose. A strike under 28 U.S.C. § 1915(g) would do little, since there is no evidence that Fulks already has any strikes. See 28 U.S.C. § 1915(g) (imposing a filing bar after three strikes). Restricting Fulks's ability to bring claims in the future would be at least as drastic as dismissal. Finally, permitting a factfinder at a hypothetical future trial for his sexual assault claim to consider Fulks's litigation misconduct would be too speculative to be considered a punishment. While we recognize that there is no evidence that Fulks has a history of litigation misconduct, we have never suggested that this fact alone takes the sanction of dismissal off the table. *Cf. Hoskins v. Dart*, 633 F.3d 541 (7th Cir. 2011) (*per curiam*) (affirming dismissal with prejudice for a single fraudulent act).

We fully appreciate the severity of the district court's decision. Dismissal prevents Fulks from litigating his allegation of sexual assault against Dr. Wilson. If one credits Fulks's account of what happened, there are serious issues the Bureau must address. But there are remedies other than a private right of action, including through the Bureau's Office of Internal Affairs, which is able to provide relief for an inmate who experienced sexual assault. In addition, Congress enacted the Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972, to make alternative remedies available. See 28 C.F.R. Part 115. In this very case, the Bureau's Central Office ensured that Fulks's allegations were forwarded to an appropriate office for review.

## IV

After finding that Fulks presented a forged document and perjured testimony, the district court determined that the appropriate sanction for his litigation misconduct was dismissal of the entire action. Although "another district court judge may have addressed the problem with a different set of sanctions or solutions, … we can reverse only where no reasonable judge would have done the same." *Fuery v. City of Chicago*, 900 F.3d 450, 455 (7th Cir. 2018). That is not the case here. The judgment of the district court is AFFIRMED.