NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2022[*]
Decided June 24, 2022

*Before*

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-3133

| | |
|---|---|
| DEANN GRAHAM, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Indiana, South Bend Division. |
| *v.* | |
| | No. 3:19-CV-386 DRL |
| COCA-COLA CONSOLIDATED, | |
| *Defendant-Appellee*. | Damon R. Leichty, |
| | *Judge*. |

**O R D E R**

DeAnn Graham, a 49-year-old black woman, sued her former employer, Coca-Cola Consolidated, after it fired her for refusing to attend a mandatory training. She alleged that the company discriminated against her because of her race, sex, and age

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

and retaliated against her for reporting racial discrimination. The district court entered summary judgment in favor of Coca-Cola Consolidated, concluding that no reasonable jury could find that the company fired Graham because of her protected status. That reasoning is correct; thus we affirm.

In reviewing the entry of summary judgment against Graham, we review the evidence in the light most favorable to her. *See Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1304 (7th Cir. 2022). Graham worked at Coca-Cola Consolidated, a company that bottles Coca-Cola beverages, from 2016 to 2018. She worked as a merchandiser, which entailed driving to grocery stores and stocking them with Coca-Cola products. Each month, the company required merchandisers to complete a safety training. If a merchandiser did not complete the training online from home by the 15th of the month, a supervisor would arrange for the merchandiser to come to the company's facility and complete the training on the premises during work hours.

In February 2018, Graham disobeyed an order regarding monthly training. She failed to complete her monthly safety training by the 15th of the month. Aaron Ridge, Graham's direct supervisor, emailed the merchandising team on February 26 to remind anyone who had not completed the training to do so the next day. On February 27, when Ridge sent Graham her daily route, he told her to come to the facility that day for her training and adjusted her route so that she would have time. Graham refused. Instead, she said that she would complete the training the next day. Ridge responded that she had to complete the training on February 27 because he could not adjust her delivery route on February 28. Ridge and William Leinart, another supervisor, warned Graham that Coca-Cola would fire her if she did not come to the facility and complete the training on February 27. Despite the warning, she still refused.

Both Leinart and Graham contacted superiors in the company later on February 27. Leinart emailed Todd Marty, then the vice president of the Indiana market, and reported Graham's disobedience. Graham called a human-resources director and complained that Ridge and Leinart were trying to fire her. According to Graham, the director responded that she should consider retirement.

Graham did not complete the safety training at the facility on February 27, as required. The parties dispute when, after that date, Graham completed her training. Coca-Cola states that Graham called in sick on February 28 and did not complete her training until March 2—after the monthly deadline. Graham states that she completed the training online on February 28.

Coca-Cola fired Graham about ten days after she disobeyed the order to come to the facility for safety training. Shortly before her discharge, on March 7, she asserted to the human-resources director that Ridge and Leinart had created a racially hostile work environment and were conspiring to fire her because of her race. Three days later, Marty ended Graham's employment. Marty testified that "[a]fter speaking to Mr. Ridge and Mr. Leinart, I decided to terminate Ms. Graham's employment due to insubordination, as Ms. Graham refused to follow the directives of her supervisors and failed to complete the mandatory safety training by the deadline."

Graham responded by suing Coca-Cola. She alleged that the company fired her because of her race, sex, age, and her complaint about race discrimination—in violation of Title VII, 42 U.S.C. §§ 2000e–2(a), 3(a), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. (She also alleged that company took other adverse actions against her, but she does not address those claims on appeal.) The district judge granted Coca-Cola's motion for summary judgment, concluding that no reasonable jury could find that the company fired Graham because of a protected characteristic. Graham had not identified any similarly situated employees who were not members of her protected class and treated more favorably. Nor had she otherwise presented evidence that would permit a factfinder to conclude that the company discriminated against her; rather, the evidence showed, Graham was fired for insubordination. The judge also rejected Graham's retaliation claim because she identified no comparators treated more favorably and failed to show that Marty knew about her complaint of discrimination.

On appeal, Graham argues that she presented sufficient evidence for a jury to conclude that Coca-Cola fired her because of her race, sex, and age and in retaliation for reporting racial discrimination. We begin with her claims of discrimination. She contends that, because the parties dispute whether she completed her training before the end-of-February deadline, a reasonable jury could conclude that she was fired for discriminatory reasons.

Graham has not shown a genuine dispute of material fact from which a jury could reasonably find that she was fired because of her race, sex, or age. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020); *Lewis v. Ind. Wesleyan Univ.*, ___ F.4th ___, 2022 WL 2093087 WL, at *2 (7th Cir. 2022). Marty stated that he fired Graham for insubordination. A sincere belief that an employee is insubordinate is a lawful basis for firing the employee. *See Burnett v. LFW Inc.*, 472 F.3d 471, 482 (7th Cir. 2006). And Graham does not dispute that she was insubordinate by disobeying an order to finish

her safety training at the facility on February 27, despite a warning that her refusal would lead to discharge. It is immaterial whether Graham actually failed to complete the training by the end February. Marty believed that Graham was insubordinate because she both refused to come to the facility for training on February 27 and failed to finish training by "the deadline." If, as Graham would like, we construe "the deadline" to mean the end of February, a reasonable jury might find that Marty believed he had *two* reasons to fire her for insubordination (her refusal to train at the facility on February 27 and her failure to train by the end of February). Graham needed to furnish evidence that these stated reasons were pretextual—that Marty did not believe them. *See Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020). But she has not. To the contrary, both of Graham's supervisors told Marty that she did not complete the training by the end of the month, and nothing suggests that Marty disbelieved them.

Graham replies that Coca-Cola subjected her to a standard more onerous than it applied to other merchandisers, and that discrimination can be inferred from this difference. She argues that Ridge gave other merchandisers until the end of February to complete their training, but the record contradicts her: Ridge emailed the merchandisers on February 26 and told them to complete their trainings by February 27—the same day Ridge required Graham to come in for training. (Also, Graham does not offer evidence suggesting that these merchandisers were excused from on-premises training.) She also asserts that 19 white men failed to complete their trainings by February 28 and were not fired. But Graham presented no evidence to support this assertion either.

Next, Graham advances one argument specific to her age-discrimination claim. She cites the remark from the human-resources director suggesting that Graham think about retirement and contends that a reasonable jury could infer from this remark that her age motivated Marty to fire her. We will assume that the director's remark is age-related, and we also recognize that an age-related remark can raise an inference of discrimination if made by the decisionmaker around the time of, and in reference to, an adverse employment decision. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir. 2016). But the human-resources director did not decide to fire Graham, nor did Graham furnish any evidence that he influenced Marty's decision.

That brings us to Graham's final claim, retaliation, which also fails. To present a triable claim that the company retaliated against her in violation of Title VII, Graham must show that the decisionmaker knew about her protected activity. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021). Yet Graham did not produce any

evidence to suggest that Marty knew about her complaint of racial discrimination to human resources before Marty fired her.

We close with a message to the parties about their lack of compliance with our rule on jurisdictional statements. Seventh Circuit Rule 28(a) requires that the appellant submit a jurisdictional statement complying with Federal Rule of Appellate Procedure 28(a)(4). Graham's brief contained no jurisdictional statement. The appellee's job is to review the appellant's jurisdictional statement and tell us if it is incomplete or incorrect. CIR. R. 28(b); FED. R. APP. P. 28(b); *Baez-Sanchez v. Sessions*, 862 F.3d 638, 641 (7th Cir. 2017). Despite the absence of a jurisdictional statement in Graham's brief, Coca-Cola (represented by counsel) inaccurately assured us in its brief that her jurisdictional statement is both "complete and correct." It is vitally important that parties submit accurate jurisdictional statements because federal courts have an obligation to assure themselves of their own jurisdiction. *Id.* We are disappointed that this did not occur here. Nevertheless, our jurisdiction is secure. The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because this action involved federal questions. And we have appellate jurisdiction under 28 U.S.C. § 1291 because the final judgment terminating all claims was entered on October 27, 2021, and Graham timely appealed on November 15, 2021.

AFFIRMED